UNITED STATES of America, Appellee,

v.

Sherman Ray MEIROVITZ, Appellant.

No. 90–5017MN.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 15, 1990.

Decided Nov. 21, 1990.

Mark W. Peterson, Minneapolis, Minn., for appellant.

Thorwald Anderson, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Sherman Ray Meirovitz was convicted of conspiracy to distribute cocaine and possession of cocaine with the intent to distribute and was sentenced to life imprisonment without parole. Meirovitz appeals his conviction, claiming (1) that his Miranda waiver, confession and consent to search his home were involuntary; (2) that the district court [1] erred in admitting weapons and ammunition seized from his home; and (3) that the government failed to prove predisposition to possess cocaine with the intent to distribute. Meirovitz also claims that his sentence is constitutionally disproportionate to his convictions and therefore violates the eighth amendment guarantee against cruel and unusual punishment. We affirm both Meirovitz' convictions and his sentence.

I.

Meirovitz was arrested on November 30, 1988, after he tried to purchase two kilograms of cocaine from undercover agents. His arrest was the result of an investiga-

---

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

tion into narcotics trafficking involving persons in Colorado, New York and Minnesota. In April 1988 the agents followed Munir Ahmed, the central figure in a narcotics trafficking organization, to the Embassy Suites Hotel in Bloomington, Minnesota. They saw Jack Sears and another suspect board Ahmed's flight from Denver to Minnesota; all three men stayed at the Embassy Suites Hotel. The agents did not see these men participating in drug activity on this occasion.

After continued surveillance of Sears in Denver, the police seized Sears' car, believing it had been used for a drug transaction. Sears agreed to cooperate in the investigation. Sears told the investigators that he was introduced to Meirovitz in December 1986, and that five months afterwards, Meirovitz asked Sears if he could put together a deal for one pound of cocaine. Sears sold the cocaine to Meirovitz for approximately $17,000. Sears also told the investigators that he sold Meirovitz one to four pounds of cocaine approximately every two months.

Sears agreed to call Meirovitz and attempt to set up a deal. Sears told Meirovitz that he had a new source who could provide cocaine for $18,500 per kilogram. Meirovitz said he was interested in two kilograms and that he would like to make partial payment in methamphetamine. Sears agreed and the deal was set up for the end of November 1988.

After Sears and the investigators arrived in Minnesota and wired the hotel room to record the conversations, Sears called Meirovitz to complete the transaction. Meirovitz arrived with $35,700 in cash, one ounce of methamphetamine (worth $1,300), a scale, calculators, plastic baggies, a mirror, and chemicals to test the quality of the cocaine. Meirovitz was given the two kilograms of cocaine and one of the undercover agents began counting the money. Meirovitz began explaining in detail the source of the methamphetamine and said that he expected a larger quantity later. As Meirovitz tested the cocaine's quality, the other agents entered the room and arrested him.

Meirovitz was advised of his rights and agreed to be interviewed by the agents. Meirovitz confirmed Sears' account of their initial meeting and subsequent drug deals. He also told the agents of a lab in California that was being set up to produce twenty pounds of methamphetamine. Meirovitz then consented to a search of his home and car. The search of his home produced $9,500 in $100 bills, seven handguns in a laundry chute, a small-caliber handgun and ammunition, papers characterized by the government as "drug notes," drug-cutting agents (lactose, mannitol and nicotinamide), an electronic digital scale, drug-related books, numerous plastic baggies, and a hollow battery that contained twelve grams of methamphetamine.

At trial, Meirovitz testified that he had not been involved in the use or distribution of drugs since his release from prison in December 1984. Meirovitz said that Sears asked him to distribute drugs, but that he refused. Meirovitz claimed that Sears kept on pressuring him, threatening violence and exposure of Meirovitz' involvement with a prostitute. Meirovitz maintained that he agreed to go along with Sears' deal out of fear. Meirovitz claimed that Sears told him to bring the methamphetamine and to act like he knew what he was doing.

Meirovitz testified that he did not recall receiving any Miranda warnings. Furthermore, he claimed that the agents' emphasis on cooperation led him to say what he thought they wanted to hear. He also testified that he signed the Miranda waiver forms and consent to search forms without being given an opportunity to read them.

Meirovitz also testified that the drug paraphernalia and drug-related items in his house were either vestiges of his drug-dealing past or property of other persons. Meirovitz presented witnesses who testified that they knew Sears coerced Meirovitz to get involved in drugs.

After a three-day jury trial, Meirovitz was convicted on both counts of conspiracy to distribute and possession with the intent to distribute. The United States Probation Officer calculated his offense level at thirty-eight and his criminal history category

at VI due to his status of career offender. Therefore, Meirovitz' appropriate sentencing range was thirty years to life. Judge Devitt sentenced Meirovitz to the maximum sentence because of his substantial criminal record which included a history of drug-dealing and the shooting death of his mother-in-law.

## II.

### A.

We review the district court's decision to deny the defendant's motion to suppress under a clearly erroneous standard. *United States v. Williams*, 917 F.2d 1088, 1090 (8th Cir.1990). Therefore, we must affirm the district court unless its decision is "unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *United States v. Jorgensen*, 871 F.2d 725, 728 (8th Cir.1989).

Meirovitz first argues that his waiver of his Miranda rights and his consent to search were involuntarily obtained. The arresting officers testified that Meirovitz was given a Miranda warning and that he signed a Miranda waiver form and consent to search forms. Meirovitz testified that he did not recall having his rights read to him and that he felt pressured to sign the Miranda waiver form and the consent to search forms. The officers' testimony and the signed forms are substantial evidence that support the district court's denial of the motion to suppress. Since there was no erroneous interpretation of the applicable law and since the totality of the record leaves us with no firm and definite conviction of mistake, we affirm the district court's denial of the motion to suppress Meirovitz' Miranda waiver and consent to search.

Meirovitz also argues that his post-arrest confession was involuntarily obtained. The appropriate test for determining the voluntariness of a confession is "whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." *Jorgensen*, 871 F.2d at 729. The two factors that must be considered in applying the "overborne will" doctrine are "the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). The officers' conduct in this case did not create an unbearably coercive atmosphere. At first, Meirovitz was thrown to the floor and handcuffed, but the handcuffs were then removed and he was seated at a table with one hand handcuffed to a chair. With Meirovitz in this position, the agents conducted their post-arrest interview. Meirovitz claims he was coerced by threats of a long prison sentence if he failed to cooperate and by the promise of a lenient sentence if he did cooperate. The agents admit that they told Meirovitz that the seriousness of the charges and his criminal history probably meant a tough sentence, but they categorically denied promising Meirovitz anything more than informing the district attorney of his cooperation. Meirovitz failed to show that he was especially susceptible to police pressure. In fact, his criminal history may have made him less likely to buckle under the pressure exerted by the police. The arresting officers' testimony provided substantial evidence supporting the voluntariness of the confession and in light of the totality of the circumstances, we determine that the pressures exerted upon Meirovitz by the arresting officers did not overbear Meirovitz' will. Furthermore, we are not left with a firm and definite conviction that a mistake has been made, and affirm the denial of the motion to suppress the confession.

### B.

Meirovitz next claims that the guns and ammunition found in his home should not have been admitted into evidence because their prejudicial effect substantially outweighed their probative value. Firearms are generally considered tools of the drug dealer's trade and can be admitted as evidence of intent to distribute. *See*

*United States v. Brett,* 872 F.2d 1365, 1370 (8th Cir.1989). Meirovitz claims that the seven handguns found in his laundry chute were merely collateral for an outstanding debt. It is significant to note that the guns were found with plenty of ammunition and that some of the "collateral" was even loaded. Given the clear relevance to the charge, and the unlikelihood that Meirovitz would have legitimate reasons for having that much firepower in his home, the trial court properly admitted the evidence.

### C.

■ Meirovitz also claims that the government did not present sufficient evidence to prove beyond a reasonable doubt that he was predisposed to possess cocaine and that therefore, the jury's conclusion that he was not entrapped is invalid. This court must affirm convictions that are challenged on sufficiency of evidence grounds if, viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The evidence need not rule out all reasonable hypotheses other than guilt; rather, "it must simply be sufficient to convince a jury beyond a reasonable doubt that the defendant is guilty." *United States v. Paul,* 810 F.2d 774, 775 (8th Cir. 1987). Given this standard, there is no question that the government presented sufficient evidence to support its assertion that Meirovitz was predisposed to possess drugs. The evidence included: Sears' description of Meirovitz' recent drug ventures, corroborated by Meirovitz' own post-arrest admissions; the ammunition, drugs, and drug paraphernalia found in Meirovitz' home; and Meirovitz' history of drug involvement. Therefore, we reject Meirovitz' insufficiency claim.

### D.

■ Meirovitz also challenges his sentence of life imprisonment without parole as disproportionate to the offenses for

which he was convicted and therefore a violation of the eighth amendment. In general, a sentence is not subject to appellate review unless it "exceeds statutory limits, violates constitutional or procedural requirements, or reflects that the district court failed to exercise its discretion or manifestly or grossly abused its discretion." *United States v. Marin–Cifuentes,* 866 F.2d 988, 996 (8th Cir.1989); *see also United States v. Mendoza,* 876 F.2d 639, 640 (8th Cir.1989). There is no question that Meirovitz' sentence was within the appropriate Guideline range and therefore within statutory limits. Additionally, Meirovitz does not claim that his sentence was defective procedurally, or that the district court abused its discretion in sentencing him to the upper limit of the appropriate Guideline range. Therefore we need only address the constitutional proportionality of the sentence.

*Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), is the seminal case on eighth amendment challenges to non-capital sentences. In *Solem,* a defendant was given a life sentence without parole for writing a $100 "no account" check. A state recidivist statute required the sentencing judge to treat the defendant's felony as a class one felony because of the defendant's six prior convictions.[2] The state court explained its sentence of life imprisonment without parole by saying, "I think you certainly earned this sentence and certainly [sic] proven that you're an habitual criminal and the record would indicate that you're beyond rehabilitation and that the only prudent thing to do is to lock you up for the rest of your natural life." *Solem,* 463 U.S. at 282–83, 103 S.Ct. at 3005–06. In reversing the state court sentence for violating the eighth amendment, the Supreme Court enumerated three objective factors to be considered when reviewing the constitutionality of a sentence. First, and most importantly, the reviewing court should "look to the gravity of the offense and the harshness of the penalty." *Solem,* 463 U.S. at 290–91, 103 S.Ct. at

2. The defendant had been convicted of grand larceny, obtaining money under false pretenses, driving while intoxicated and three separate third degree burglary offenses.

3009–10. Second, the Court stated that *"it may be helpful* to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, *that is some indication that the punishment at issue may be excessive."* *Id.* at 291, 103 S.Ct. at 3010 (emphasis added). Finally, *"courts may find it useful* to compare the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 291–92, 103 S.Ct. at 3010 (emphasis added). The Court qualified its analysis by noting, "[i]n view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *Id.* at 290 n. 16, 103 S.Ct. at 3010 n. 16; *see also Tyler v. Gunter,* 819 F.2d 869, 871 (8th Cir.1987) (appellate court substantially defers "to a legislature's broad authority to determine types and limits of punishment and to trial courts who have the discretion to sentence offenders"). However, because Meirovitz was sentenced to life without parole, we will engage in the rare review of the constitutionality of a district court sentence.

*Solem* first directs the reviewing court to consider the gravity of the offense and the harshness of the penalty. *Solem,* 463 U.S. at 290–91, 103 S.Ct. at 3009–10. Consideration of this factor includes examining the "harm caused or threatened to the victim or society and the culpability of the offender." *Id.* at 292, 103 S.Ct. at 3010. Meirovitz was convicted of possession of narcotics with the intent to distribute and of conspiracy to possess narcotics with the intent to distribute. These offenses are at the root of some of the gravest problems facing our country. The "fruit" of the drug plague is everywhere; it fills our jails, our courts, our streets, and our nurseries. As the Fifth Circuit commented when it upheld a drug dealer's sentence of life without parole:

> Except in rare cases, the murderer's red hand falls on one victim only, however grim the blow; but the foul hand of the drug dealer blights life after life and, like the vampire of fable, creates others in its owner's evil image—others who create others still, across our land and down our generations, sparing not even the unborn.

*Terrebonne v. Butler,* 848 F.2d 500, 504 (5th Cir.1988) (en banc). Just as there is no question as to the serious nature of Meirovitz' crime, there is no question that his sentence is harsh. He faces the second most stringent penalty in America, a sentence we do not affirm lightly. However, proportionality requires that we view the sentence in light of the crime. Accordingly, given that drug dealers themselves sentence many individuals to a lifetime of addiction and dependency, a life sentence for repeatedly dealing drugs cannot be considered disproportionately cruel and unusual. Therefore the first factor of the *Solem* analysis does not require reversal of Meirovitz' sentence.

The next step in the *Solem* proportionality analysis is a comparison of Meirovitz' sentence with sentences imposed on other criminals in the same jurisdiction. There are two aspects to this portion of the analysis: first, whether more serious crimes receive the same penalty; and second, whether similarly-situated criminals receive similar sentences. Determining whether more serious crimes receive the same penalty requires a closer look at the structure of the Sentencing Guidelines. Even though the Guidelines were designed to reduce indeterminacy in sentencing and remove inter– and intra-circuit disparities, the Guidelines have been accused of aggravating the problem they were created to solve. *See Mistretta v. United States,* 488 U.S. 361, 413–15, 109 S.Ct. 647, 676, 102 L.Ed.2d 714 (1989) (Scalia, J., dissenting); *United States v. O'Meara,* 895 F.2d 1216, 1221–23 (8th Cir.1990) (Bright, J., dissenting). In determining whether the Guidelines permit the same sentence for drastically varying offenses, we must look not only at the end result, but also at the process set up by the Guidelines for arriving at the applicable sentencing range. The Guidelines take a crime and disassemble it into quanta of criminality via governmentally-designed al-

gorithms. These quanta are then added up to produce the criminal offense level. The Guidelines use the criminal offense level in conjunction with a classification of the criminal's history to arrive at a sentencing range. At the moment the sentencing range is determined, all facts associated with the criminal and the crime have been reduced to two discrete values. In theory, this structure should increase determinacy in sentencing and decrease disparities. However, problems arise when the sum of the parts of a criminal venture is either greater or less than the apparent whole. It is these inherent and unavoidable problems that courts must explore when engaging in proportionality analysis. Therefore, even though Meirovitz received a penalty harsher than other career offenders with significantly more violent backgrounds, this alone does not mean that his sentence is disproportionate. Comparing sentences out of context can lead to illusory disparities that disappear upon closer examination. For example, Meirovitz cites *United States v. Williams*, 892 F.2d 296 (3d Cir.1989), as a situation in which a person with a significantly more violent background (prior convictions included rape, assaulting a man with a baseball bat and burglary), and who was also a career offender, received a sentence in the lower end of the range. *Id.* at 303, 305. What Meirovitz fails to note is that the defendant in *Williams* was moderately retarded, had severe learning disabilities, and on the night of the crime [3] was intoxicated. Therefore, Meirovitz' sentence was not disproportionate when compared with vastly dissimilar crimes.

Meirovitz' sentence is not disproportionate when compared to other defendants similarly situated in the Eighth Circuit. In *United States v. McKines*, 917 F.2d 1077 (8th Cir.1990), this court upheld a sentence of life imprisonment without parole for a third conviction for drug trafficking. *Id.* at 1080–1081. In that case, the defendant's criminal history did not include anything similar to Meirovitz' involvement in the shooting death of his mother-in-law. In *United States v. Milburn*, 836 F.2d 419

(8th Cir.1988), the defendant's life sentence was not considered excessive in view of his position as an organizer in a drug trafficking operation. *Id.* at 421. Additionally, this court has repeatedly upheld harsh penalties for drug-related offenses. *E.g., United States v. Marin–Cifuentes*, 866 F.2d 988 (8th Cir.1989) (defendant received sixty years' imprisonment and $4 million fine for two counts of aiding and abetting distribution of cocaine, importing cocaine, and conspiring to distribute cocaine); *Tyler v. Gunter*, 819 F.2d 869 (8th Cir.1987) (defendant sentenced to five years' imprisonment for possession of one-eighth gram of hashish). Therefore, although Meirovitz' sentence may be harsh, it is not disproportionate when compared to sentences imposed on similarly situated persons within the Eighth Circuit. Consequently, the second factor of the *Solem* analysis does not require reversal.

Finally, Meirovitz' sentence is not disproportionate when compared to sentences imposed for the same crime in other jurisdictions. In *United States v. Martorano*, 866 F.2d 62 (3d Cir.1989), the Third Circuit upheld a drug dealer's sentence of life without parole, noting that the defendant's sentence was commensurate with sentences imposed on other drug dealers. *Id.* at 70 n. 6. In *Young v. Miller*, 883 F.2d 1276 (6th Cir.1989), the Sixth Circuit held that a Michigan court's imposition of a life sentence without parole for possession of 650 grams of heroin with intent to distribute was not cruel and unusual even though the defendant was a first-time offender. *Id.* at 1282. Furthermore, the *Young* court also noted that increasingly harsher sentences are being imposed upon defendants in drug cases. *Id.* at 1284–85. Therefore, because Meirovitz' sentence is consistent with the sentence ranges for drug crimes in other jurisdictions, the third factor of the *Solem* analysis does not require reversal.

Considering the three factors enumerated in *Solem* leads us to conclude that Meirovitz' life sentence without parole, although harsh, does not violate the proportionality requirement of the eighth amend-

---

**3.** The defendant was charged with unlawful possession and discharge of a firearm.

ment. The additional issues raised by Meirovitz in his pro se brief are either without merit or not properly before this court because they should be raised in a subsequent habeas petition.

### III.

For the foregoing reasons, Sherman Ray Meirovitz' convictions and sentence are affirmed.