UNITED STATES of America, Appellee,

v.

Ricky HAZELETT, Appellant.

No. 93–4015.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1994.

Decided Aug. 22, 1994.

1314

Jacqueline Cook, Kansas City, MO, argued (James R. Wyrsch, on the brief), for appellant.

John J. Ware, St. Louis, MO, argued, for appellee.

Before LOKEN, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Ricky Hazelett appeals his conviction and sentence for possessing with the intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii). For the reasons hereinafter stated, we reverse Hazelett's conviction and remand for a new trial.

## I. Background

On January 29, 1993, Drug Enforcement Administration (DEA) Agent Carl Hicks, while working a drug interdiction detail at the bus station in Springfield, Missouri, boarded a bus momentarily stopped while en route from Los Angeles to St. Louis. He approached a woman who identified herself as Theresa King. King agreed to talk to Hicks and eventually consented to a search of her bag. Upon conducting the search, Hicks discovered two kilograms of cocaine. He immediately placed King under arrest and advised her of her *Miranda* rights.

King agreed to cooperate and told Hicks that a man named Ricky gave her the bag in Los Angeles, bought her a bus ticket to St. Louis, gave her thirty dollars spending money, and drove her to the bus station. King further stated that Ricky told her to call the telephone number written on her ticket when she arrived in St. Louis. Ricky allegedly promised King another one thousand dollars for delivering the drugs to St. Louis.

Upon hearing King's explanation, Hicks contacted the DEA office in St. Louis and arranged a controlled delivery at the St. Louis bus station. That same morning, he drove King to St. Louis and met with other officers in order to devise a plan. During this time, King met DEA Task Force Detective Michael Busalaki. After Busalaki re-advised King of her *Miranda* rights, she repeated several of the statements she had previously made to Hicks. She also gave a physical description of the man who gave her the drugs.

At approximately 1:15 p.m., King arrived at the St. Louis bus station. Several officers

were stationed either in or around the area. King called one of the telephone numbers, which turned out to be a beeper number, written on her ticket. Some twenty minutes after King's receipt of a return call, a red Mazda driven by Hazelett stopped outside the station, and two women got out of the car and entered the bus terminal. They met King and led her outside. The two women got into the car, and King placed her luggage in the car. At that point, several officers approached the car holding guns and badges. Hazelett immediately drove away, leaving King standing on the sidewalk. A high speed chase ensued but eventually ended when the red Mazda crashed in an alley. Hazelett attempted to escape on foot but eventually was caught and arrested. In his jacket pocket the arresting officers found a plane ticket for a January 28, 1993, flight from Los Angeles to St. Louis.

Later that afternoon DEA Task Force Detective Stephen Strehl interviewed King, who gave both verbal and written statements recounting the story she had told to Hicks and Busalaki. She also described the events which took place at the St. Louis bus station. In doing so, she implicitly identified Hazelett as the same "Ricky" who had given her the drugs in Los Angeles.[1]

Complaints were filed against Hazelett, King, and the two women who accompanied Hazelett to the bus station. King was released on her own recognizance, and she returned to California. On February 18, 1993, King came back to St. Louis for her preliminary examination. At that time, the magistrate judge discovered that because King had been apprehended in Springfield, she had to be charged in the Western District rather than the Eastern District of Missouri. The court therefore dismissed the original complaint against King.

On February 19, 1993, the day after her preliminary examination, King, accompanied by an attorney, submitted to a proffer interview with Detective Busalaki. During this interview, King repeated the substance of her previous statements and then entered into an agreement with the government pursuant to which the latter agreed to recommend a downward departure at sentencing in exchange for King's cooperation and testimony. King also agreed to plead guilty to possession with intent to distribute cocaine.

On February 24, 1993, King testified before a grand jury in St. Louis, reiterating the substance of her previous statements. After this testimony, Detective Busalaki took King to the St. Louis bus station, purchased a ticket for her at the government's expense, and placed her on a bus going to Los Angeles. King has not been seen since. Though she was indicted in the Western District of Missouri on March 12, 1993, she failed to surrender to authorities in Springfield. Moreover, she failed to return to St. Louis for Hazelett's trial. Significant efforts to locate King by authorities in both Los Angeles and St. Louis proved fruitless.

At Hazelett's trial, the government's case included the testimony of several officers involved in the events leading to Hazelett's arrest. The court also allowed admission, over defendant's objection, of the various statements King made implicating Hazelett. The court ruled that the statements were admissible pursuant to Fed.R.Evid. 804(b)(3) as statements against the penal interest of the declarant. The government also submitted the testimony of two officers who had arrested Hazelett in Tacoma, Washington, after finding him in a room with seven ounces of crack cocaine. Hazelett objected to this evidence, primarily because the Ninth Circuit reversed the resulting conviction due to insufficient evidence. Nevertheless, the court

---

1. In pertinent part, King's written statement provided as follows:

     About two day [sic] ago Ricky came up to me and asked me to go out of town. I know what he wanted was for me to deliver cocaine for him. He said he would pay me $1,000 for the trip. I said, okay. On Wednesday 1/27/93 Ricky gave me a bag with the cocaine and told me to put it in my bag. Ricky drove me to the bus station. Ricky gave me a bus ticket to St.

Louis. Ricky told me to call the phone number on the ticket and he would pick me up in St. Louis and take the cocaine.... At the bus station I called the phone number on the ticket. A male called back and told me Ricky was on the way. Two girls came in bus station and told me Ricky was in the car. I took the bags out to Ricky and put the bags in the car where Ricky was. Ricky drove away real fast.

allowed the testimony under Fed.R.Evid. 404(b).

Hazelett testified in his own defense. He denied any involvement with or knowledge of the drugs in King's luggage. He testified that he was distantly related to King and had known her for approximately ten years. He further stated that he and King had a mutual relative in St. Louis and that one of the phone numbers written on King's bus ticket belonged to that relative's boyfriend. He admitted flying from Los Angeles to St. Louis just before King's arrival, but he claimed his purpose was to attend a concert. According to Hazelett, he went to the bus station to pick up King because her sister had asked him to do so. He asserted that when the officers converged on his car, he became frightened because they had their guns drawn and he did not realize they were police.

The jury convicted Hazelett of possessing with intent to distribute more than 500 grams of cocaine. The district court subsequently sentenced Hazelett as a career offender to 360 months imprisonment and eight years of supervised release. Hazelett filed a timely appeal.

## II. Discussion

Hazelett raises three issues. First, he claims the admission of King's statements violated both Rule 804(b)(3) and the Confrontation Clause. Second, he claims the admission of testimony regarding his arrest and conviction in Tacoma was improper under Rule 404(b). Third, he asserts the district court erred in sentencing him as a career offender because one of his prior drug offenses occurred when he was under the age of eighteen.

### A. Hearsay

Because the government sought admission of King's out-of-court statements for the truth of the matters asserted, those statements were hearsay. Fed.R.Evid. 801(c). Nevertheless, the district court held that those statements fell within the scope of Rule 804(b)(3), an exception to the general rule that hearsay is inadmissible. This ruling may be disturbed on appeal only if it was an abuse of discretion. *United States v. Bobo,* 994 F.2d 524, 528 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 250, 126 L.Ed.2d 203 (1993).

Rule 804(b)(3) provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

This circuit has developed a three prong test which must be satisfied before an inculpatory statement may be admitted pursuant to Rule 804(b)(3).

[I]t must be shown that (1) the declarant is unavailable as a witness, (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement.

*United States v. Riley,* 657 F.2d 1377, 1383 (8th Cir.1981). Hazelett contends none of these three elements are satisfied as to King's statements.

### 1. Unavailability

In a sense, King was certainly unavailable, for she could not be found for trial. However, Hazelett contends the government should not be allowed to use her disappearance to its advantage because, in his view, the government procured King's absence by releasing her on her own recognizance and purchasing her bus ticket to Los Angeles. The government responds that it made a diligent,

good faith effort to locate King prior to trial. For instance, several agencies, including the DEA, the United States Marshal's Service, and the Los Angeles Police Department, attempted to find King. Subpoenas were left at three or four addresses, and hospitals were placed on notice that King, who was pregnant, might seek medical treatment. Finally, Detective Busalaki himself flew to Los Angeles for a two day attempt to locate King.

According to Rule 804(a)(5), a witness is "unavailable" if she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means." However, "[a] declarant is not unavailable as a witness if ... absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying." Fed.R.Evid. 804(a).

In this case, it is arguable that the government was at the very least negligent in releasing King on her own recognizance, purchasing her bus ticket out of St. Louis, and placing her on the bus. Such an argument is not without some persuasive effect, for King was a material witness who could have been detained pursuant to the Bail Reform Act. 18 U.S.C. § 3144. Moreover, she had been caught with a large amount of cocaine and was soon to be charged for possession with intent to distribute.

On the other hand, King had been released on her own recognizance in January and had returned for her preliminary examination in February. Such action suggested she could be trusted to return again for Hazelett's trial. In addition, when she left St. Louis the second time, she had entered into a cooperation agreement with the government. Considering the government's promise to recommend a light sentence, one might logically assume King would not wish to violate that agreement.[2]

In short, it is a close question whether the government's actions were so egregious as to preclude a finding of unavailability under Rule 804(b)(3). Though we are inclined to believe the government acted reasonably in releasing a cooperative witness who had proven reliable in the past, we also realize that certain factors counselled against release. In any event, we need not decide this issue, for we believe King's statements were not sufficiently against her penal interest. We therefore turn to the second criterion for admission under Rule 804(b)(3).

### 2. Against Penal Interest

"The admission of out-of-court statements by an unavailable declarant to inculpate a third party requires careful thought." *United States v. One Star,* 979 F.2d 1319, 1322 (8th Cir.1992). Indeed, "[d]epending upon the circumstances in which it is made, a particular statement which is ostensibly disserving may in fact be either neutral or self-serving." *Riley,* 657 F.2d at 1384. This is particularly true if the declarant is in custody when the statement is made, for "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." Fed.R.Evid. 804(b)(3), Advisory Committee Notes Exception (3); *see also Riley,* 657 F.2d at 1384; *United States v. Love,* 592 F.2d 1022, 1025 (8th Cir.1979). Such cases require a close examination of the circumstances in which a statement is made.

In addition, an unavailable declarant's lengthy narrative is not admissible under 804(b)(3) merely because some portion of the narrative subjects the declarant to criminal liability. *Williamson v. United States,* ——— U.S. ———, ———, 114 S.Ct. 2431, 2432, 129 L.Ed.2d 476 (1994); *see also United States v. Lilley,* 581 F.2d 182, 188 (8th Cir.1978). Those portions which are not in and of themselves against the declarant's penal interest

---

**2.** We also note that the government obviously did not act with the purpose of preventing King's live testimony. However, it is not certain that such a purpose need be present in order to preclude a finding of unavailability. Indeed, the Advisory Committee's Notes to Rule 804(a) state: "If the conditions otherwise constituting unavailability result from the procurement or wrongdoing of the proponent of the statement, the requirement is not satisfied."

are not admissible. *Williamson,* —— U.S. at ——, 114 S.Ct. at 2432.

As to the disputed statements in this case, we realize that in a sense they were against King's penal interest, for they could have been used as evidence in her prosecution. However, "[t]he question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" *Id.* at ——, 114 S.Ct. at 2437. Upon examination of the context in which King made her statements, we are convinced that, at least as to the remarks implicating Hazelett, this test has not been satisfied.

King's statements were made following her arrest in Springfield, where she had been caught with two kilograms of cocaine. Once those drugs were discovered, for all practical purposes King's conviction was assured. Consequently, she had nothing to lose by confessing, and she certainly had nothing to lose by implicating another person, particularly someone more culpable. In fact, we believe King is a good example of a declarant possibly "motivated by 'the very natural desire to curry favor from the arresting officers, [and] the desire to alleviate culpability by implicating others....'" *Riley,* 657 F.2d at 1384 (quoting *United States v. Sarmiento–Perez,* 633 F.2d 1092, 1102 (5th Cir.1981)). Several courts, including our own, have rejected out-of-court statements in similar circumstances. *See, e.g., United States v. Johnson,* 802 F.2d 1459, 1465 (D.C.Cir.1986) (declarant's post-arrest statement inadmissible because it was "highly logical" for him to trivialize own involvement by implicating another as the kingpin of the drug operation); *United States v. Monaco,* 735 F.2d 1173, 1177 (9th Cir.1984) (declarant's testimony in presence of state attorney general, in bankruptcy proceeding similar to deposition, was not admissible in defendant's prosecution because declarant minimized own responsibility while implicating defendant); *United States v. Palumbo,* 639 F.2d 123, 128 (3d Cir.) (statement

not against penal interest because made in police custody in response to police questioning), *cert. denied,* 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981); *Sarmiento–Perez,* 633 F.2d at 1102 (excluding "custodial confession, given under potentially coercive circumstances that could not at trial—and cannot now—be adequately examined"); *Lilley,* 581 F.2d at 188 (husband's statements to secret service agent admitting guilt but implicating wife as more culpable party, made while husband was the prime suspect in investigation, were not admissible in wife's prosecution).

Our conclusion is consistent with the Supreme Court's decision in *Williamson,* which is factually similar to this case. In *Williamson,* the declarant was arrested following a traffic stop during which large amounts of cocaine were found in declarant's car. Shortly after the arrest, and while in custody, the declarant made statements to a DEA agent indicating that he was transporting the drugs for Williamson. Though the Court remanded to the Eleventh Circuit for a "fact-intensive inquiry" as to which portions of the declarant's confession were truly self-inculpatory,[3] it expressed doubt that all of the statements, particularly those implicating Williamson, were in fact against the declarant's penal interest. For example, the Court noted that some of the statements making no reference to Williamson were possibly against the declarant's interest. In particular, "when he said he knew there was cocaine in the suitcase, he essentially forfeited his only possible defense to a charge of cocaine possession, lack of knowledge." *Williamson,* —— U.S. at ——, 114 S.Ct. at 2437. However,

> other parts of his confession, *especially the parts that implicated Williamson,* did little to subject [declarant] himself to criminal liability. A reasonable person in [declarant's] position might even think that implicating someone else would decrease his practical exposure to criminal liability, at least so far as sentencing goes. Small fish in a big conspiracy often get shorter sentences than people who are running the whole show, ..., especially if the small fish

---

**3.** In this particular case, we do not believe a remand to the district court is necessary, for we have access to the entire trial record, which

includes all of the disputed testimony, and there is no question regarding the credibility of witnesses.

are willing to help the authorities catch the big ones, . . . .

*Id.* (emphasis added). Similarly, Justice Ginsburg stated in a concurring opinion that

[declarant] was caught red-handed with 19 kilos of cocaine. . . . He could have denied knowing the drugs were in the car's trunk, but that strategy would have brought little prospect of thwarting a criminal prosecution. He therefore admitted involvement, but did so in a way that minimized his own role and shifted blame to petitioner. . . .

To the extent some of those statements tended to incriminate [the declarant], they provided only marginal or cumulative evidence of guilt. They project an image of a person acting not against his penal interest, but striving mightily to shift principal responsibility to someone else.

*Id.* at ——, 114 S.Ct. at 2439–40 (Ginsburg, J., concurring).

Because we hold that King's statements implicating Hazelett were not sufficiently against her interest, they were not admissible under Rule 804(b)(3).[4] The district court's ruling to the contrary was an abuse of discretion.

■ Furthermore, we do not believe the error was harmless, for King's statements were the only evidence that Hazelett originally gave the cocaine to her. Had they not been admitted, the jury may well have concluded that Hazelett had no knowledge of the drugs. Moreover, in such circumstances the jury might very well have accepted Hazelett's explanations for his presence in St. Louis, his arrival at the bus station, and his attempt to flee. Therefore, we cannot say that admission of King's statements did not substantially influence the jury's verdict. *See United States v. Alonzo,* 991 F.2d 1422, 1427 (8th Cir.1993); *United States v. Drummond,* 903 F.2d 1171, 1174 (8th Cir.1990),

---

**4.** Because King's statements were not against her penal interest, we need not discuss the question whether there were corroborating circumstances indicating trustworthiness. Moreover, we need not discuss Hazelett's contention that admission of King's statements violated the Confrontation Clause.

**5.** Hazelett contends he is entitled to a judgment of acquittal, for without King's statements which

*cert. denied,* 498 U.S. 1049, 111 S.Ct. 759, 112 L.Ed.2d 779 (1991).

Because we reverse and remand for a new trial,[5] we need not decide Hazelett's other claims of error. Nevertheless, we take the opportunity to briefly discuss those issues as they may arise in further proceedings.

### B. Other Crimes Evidence

■ Hazelett claims the district court erred in admitting testimony of his arrest in Tacoma and of the seven ounces of crack cocaine found at the time. He contends this incident was not relevant to any element of the government's case. He also asserts that because the Ninth Circuit overturned his conviction for insufficient evidence, *United States v. Hazellette,* 956 F.2d 275 (9th Cir. 1992), there was insufficient proof before the district court in this case that he actually committed a crime in Tacoma. We reject Hazelett's arguments.

■ Rule 404(b) allows admission of other crimes evidence if it is (1) relevant to a material issue, (2) established by a preponderance of the evidence, (3) more probative than prejudicial, (4) and similar in kind and close in time to the events at issue. *King v. Ahrens,* 16 F.3d 265, 268 (8th Cir.1994). The district court's decision to admit such evidence is reviewed under an abuse of discretion standard. *United States v. Drew,* 894 F.2d 965, 969 (8th Cir.), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990).

■ We do not believe the district court abused its discretion in this instance. Because the testimony revealed that seven ounces of crack cocaine was a substantial amount, it could be reasonably inferred that the drugs were being held for distribution. Because the disputed testimony connected Hazelett to such distribution, it was relevant

---

inculpate him the government has insufficient evidence to support a conviction. We do not decide this issue because we prefer to leave the determination for the district court to pass upon in the context of a new trial where the evidence may be presented in different fashion. Indeed, this course of action will not foreclose the possibility that King may be found before retrial.

**1320**

as to his knowledge and his intent to distribute in this case. Moreover, we cannot say the prejudicial effect of the evidence outweighed its probative value. In fact, any prejudice resulting from the testimony was greatly diminished by the defense's cross-examination, which revealed that Hazelett's conviction had been overturned. We also believe the evidence was similar in kind and sufficiently close in time to the crimes tried below.

The only question then is whether there was sufficient proof that Hazelett actually committed the prior crime. Again, we cannot say the district court abused its discretion, for the burden of proof under Rule 404(b) is significantly less stringent than the beyond a reasonable doubt standard required in criminal prosecutions. Thus, the Ninth Circuit's holding that there was insufficient proof beyond a reasonable doubt does not preclude a finding in this prosecution that a preponderance of the evidence establishes Hazelett's involvement in the Tacoma crime. *Cf. United States v. Van Cleave*, 599 F.2d 954, 957 (10th Cir.1979) (Evidence of other crime admissible under 404(b) even though defendant was acquitted of that crime).

### C. Sentencing

■ According to United States Sentencing Guidelines (U.S.S.G.) § 4B1.1, a defendant may be sentenced as a career offender if, *inter alia*, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Commentary to the guidelines indicates that a prior felony conviction is a "prior *adult* federal or state conviction." U.S.S.G. § 4B1.2, comment. (n. 3) (emphasis added).

In this case, Hazelett contends the district court erred in sentencing him as a career offender because the court considered a prior offense which occurred when Hazelett was seventeen. He argues that the conviction which resulted from that offense should not be considered an adult conviction. However, Hazelett was tried and convicted as an adult for the offense in question. This fact is dispositive, for "[a] conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult convic-

tion under the laws of the jurisdiction in which the defendant is convicted...." *Id.*; *see also United States v. Fonville*, 5 F.3d 781, 785 (4th Cir.1993); *United States v. Pinion*, 4 F.3d 941, 945 (11th Cir.1993); *United States v. Carillo*, 991 F.2d 590, 593 (9th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 231, 126 L.Ed.2d 186 (1993); *United States v. Muhammad*, 948 F.2d 1449 (6th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). The district court properly considered Hazelett's prior conviction in determining whether he should be sentenced as a career offender.

### III. Conclusion

Accordingly, we reverse the judgment of the district court and remand for a new trial.