_____

No. 95-3572
_____

United States of America,           *
                                    *
        Appellant,                  *
                                    *
    v.                              *
                                    *
Cirilo Mendoza,                     *
                                    *
        Appellee.                   *

_____

No. 95-3573                          Appeals from the United States
_____                         District Court for the
                                    Southern District of Iowa.

United States of America,           *
                                    *
        Appellant,                  *
                                    *
    v.                              *
                                    *
Cirilo Mendoza, Martha Wheeler,     *
                                    *
        Appellees.                  *
                            _____

                Submitted:  March 13, 1996

                    Filed:  June 11, 1996
                            _____

Before FAGG, BRIGHT, and WOLLMAN, Circuit Judges.
                            _____


WOLLMAN, Circuit Judge.


        Pursuant to 18 U.S.C. § 3731, the government appeals from two orders entered by the district court suppressing as evidence statements made by defendant Martha Wheeler.  The first order granted Wheeler's motion to suppress evidence on the basis that her statements were involuntary, and the second order precluded the government from using Wheeler's statement implicating co-defendant Cirilo Mendoza, on the theory that the statement was inadmissible

hearsay.  We affirm in part and reverse in part.

## I.  Background

On July 28, 1995, agents of the Drug Enforcement Administration (DEA) and the Iowa Division of Narcotics Enforcement (DNE) executed a search on Carmella Sue House's residence.  House agreed to cooperate with the agents after they discovered evidence of drug activity.  House told the agents that her source of methamphetamine was a person named Martha Wheeler and that Wheeler's source was a person named Cirilo.  She also informed them of the details of a methamphetamine purchase she was to make later that day.  According to House, one pound of methamphetamine, which was to cost her $16,000, was to be placed next to a tire and a metal pipe beside a gravel road in a wooded area.

While the agents were at House's residence, House received a telephone call from Wheeler.  Wheeler and House arranged to meet so that House could pay Wheeler for the methamphetamine that was to be delivered later that day.  One of the agents accompanied House to the prearranged meeting place while several other agents followed.  The agents observed Wheeler get into House's vehicle and accept a payment of approximately $16,000.  While inside the vehicle, Wheeler told House that the methamphetamine would be delivered later that day to the drop site that had been used previously.  As Wheeler exited House's vehicle and returned to her own, DNE Agent Dan Stepleton approached Wheeler and identified himself as a law enforcement officer.  After retrieving the $16,000 payment from Wheeler's purse, Stepleton advised Wheeler that he knew that she had received the money as payment for methamphetamine and that he was seeking her cooperation in finding her source.  After advising Wheeler of her Miranda rights, Stepleton got into Wheeler's vehicle and directed her to drive to the Muscatine County Drug Task Force office which was located a few blocks away.  While en route to the office, Stepleton told Wheeler that if she did not cooperate, she

would be arrested immediately.

Wheeler was again advised of her <u>Miranda</u> rights by DEA Agent David Mizell upon her arrival at the Drug Task Force office parking lot. Mizell told Wheeler that he knew she was involved in a methamphetamine transaction but that she was not under arrest and would not be charged at that point. After Mizell told Wheeler that he could not make any deals concerning the charges but that he would make her cooperation known to the United States Attorney, Wheeler agreed to cooperate.

Wheeler gave a general description of the drop site location that coincided with the description given by House. She then pointed out two possible drop site locations to the agents and returned to her house to wait for a telephone call from her source. She was permitted to drive her own vehicle to the drop site locations and to her house. While waiting for the telephone call, Wheeler told the agents that her source was a Mexican male named "Beaner." Later, she said that her source's true name was "Jose." She confirmed that he was to deliver the drugs to a rural location in Muscatine County and place them in a culvert, a tire, or a pipe that was located near a gravel road. Wheeler told the agents that she had delivered one-pound quantities of methamphetamine to House on three prior occasions. She also mentioned that she had a boyfriend named Cirilo Mendoza but that he was not involved in the transaction.

After receiving a telephone call informing them that a suspect had been arrested near one of the drop site locations, the agents left Wheeler's residence and recovered one pound of methamphetamine in a culvert by a gravel road in Muscatine County. Thereafter, they returned to Wheeler's residence and confronted her with the fact that Mendoza had been arrested near the drop site location. Wheeler then admitted that Mendoza had gone to the location to deliver the methamphetamine.

Wheeler and Mendoza were charged with conspiring to distribute and possess methamphetamine in violation of 21 U.S.C. § 841(a)(1). Wheeler filed a motion to suppress her July 28th statements. Mendoza moved to sever his trial from Wheeler's on the theory that Wheeler's statements were inadmissible hearsay as to him. On September 29, 1995, the district court granted Wheeler's motion to suppress, finding that the statements were not voluntarily made. On the same day, the district court denied Mendoza's motion to sever, concluding that the issue was moot because of its ruling on Wheeler's motion to suppress.

The government timely appealed the district court's order suppressing Wheeler's statements. After receiving notice of the appeal, the district court entered an order severing the defendants' cases for trial. Wheeler's trial was continued so that the appeal could be processed, but Mendoza's trial was set to proceed as scheduled on October 2, 1995.

Prior to the start of Mendoza's trial, the district court entered a clarification to the effect that its prior suppression order "did not purport or intend to hold that the evidence of the statements is inadmissible against defendant Mendoza. That was a separate issue which has been ruled on this date in a Rule 104(a) ruling." The district court then filed an order precluding the government from using Wheeler's statement implicating Mendoza, on the theory that the statement was inadmissible hearsay under Federal Rule of Evidence 804(b)(3). Later that day, the government filed a notice of appeal from the second order. We address both orders in this appeal.

## II. Jurisdiction

As a preliminary matter, Mendoza contends that because he was not a party to the first order entered by the district court, we lack jurisdiction over the appeal as to him. Section 3731 states,

-4-

in relevant part:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

Because the district court's second order effectively prevents the government from using Wheeler's statement to implicate Mendoza, we have jurisdiction under section 3731.

## III.  Merits

### A.  Voluntariness of Wheeler's Statements

The government first contends that the district court erred in finding that Wheeler's statements were not voluntary.  We review de novo the ultimate issue of whether a confession is voluntary, but we review the district court's factual findings underlying its decision for clear error. United States v. Johnson, 47 F.3d 272, 275 (8th Cir. 1995) (citing United States v. Casal, 915 F.2d 1225, 1228 (8th Cir. 1990), cert. denied, 499 U.S. 941 (1991)).  In determining whether a confession is voluntary, a court should examine the circumstances surrounding the confession, including "`the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess.'"  Id. at 276 (quoting Casal, 915 F.2d at 1228).

In assessing the voluntariness of Wheeler's statements, the district court reasoned:

> Were it not for the fact that Special Agent Stepleton told defendant Wheeler that she would be immediately arrested if she did not cooperate with the officers, I would probably conclude that all of her statements to the officers were voluntary. The totality of circumstances in this case includes, however, the fact that defendant Wheeler was told near the outset of events and before she made any statements, that the only alternative to cooperating with the officers was immediate arrest. That threat, which was made while defendant Wheeler was in a custodial situation, is a coercive facet in the totality of the circumstances.

In the light of the totality of the circumstances, we cannot agree that Wheeler's will was overborne so as to make her statements involuntary. First, the agents gave Miranda warnings to Wheeler on two occasions. The fact that such warnings were given weighs in favor of a voluntariness finding. Wayne R. LaFave & Jerold H. Israel, Criminal Procedure 268 (1985). In addition, the agents did not place Wheeler in handcuffs or subject her to physical or emotional coercion. The first encounter by Agent Stepleton took place on a street while Wheeler was in her own vehicle. The second encounter took place in the parking lot of the Drug Task Force office. Finally, the bulk of Wheeler's statements were made in her own home.

Further, during her encounter with the agents Wheeler was permitted to drive her own car to the Drug Task Force office, to the possible drop site locations, and to her house. There was no lengthy interrogation by the agents, nor did the agents use trickery or deceit to obtain Wheeler's statements. Moreover, Wheeler presented no evidence that she was particularly susceptible to police pressure. Finally, the agents' promise that they would make Wheeler's cooperation known to the United States attorney did not transform an otherwise voluntary statement into an involuntary one. See United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995) (promise of leniency, by itself, does not make confession involuntary); United States v. Harris, 914 F.2d 927, 933 (7th Cir.

1990) (police may solicit confession by offering to reduce charges against defendant).

The district court placed emphasis on Agent Stepleton's statement that Wheeler would be arrested immediately if she did not cooperate. We conclude, however, that this single statement was not so coercive as to deprive Wheeler of her ability to make an unconstrained decision to confess. See United States v. Hocking, 860 F.2d 769, 774 (7th Cir. 1988) (FBI agents' threats that defendant faced criminal charges and imprisonment did not make defendant's confession involuntary). See also United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir.) (suggestion by law enforcement that defendant might suffer while serving long prison sentence did not make ensuing statement involuntary), cert. denied, 506 U.S. 964 (1992); United States v. Nash, 910 F.2d 749, 752-53 (11th Cir. 1990) (officer's discussion of realistic penalties for cooperative and non-cooperative defendants did not make defendant's confession involuntary); United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990) (agents' threats of long prison sentence if defendant failed to cooperate did not make statements involuntary), cert. denied, 502 U.S. 829 (1991); Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (confession voluntary even though defendant with below-average IQ was subjected to seven and one-half hour interrogation with agent who played on his emotions); Cf. Kilgore, 58 F.3d at 353 (statements voluntary despite evidence that defendant's motivation in confessing was to recover his impounded vehicle and not spend the night in jail). We find persuasive the fact that Wheeler did not make any incriminating statements or decide to cooperate until after Agent Mizell had given her Miranda warnings and had told her that she would not be arrested or charged that day. Thus, we conclude that Wheeler's will was not overborne by the agents when she decided to cooperate.

**B. Admissibility of Statement Implicating Mendoza**

The government also contends that the district court erred in prohibiting the use of Wheeler's statement to incriminate Mendoza, on the theory that the statement was admissible under Rule 804(b)(3).  We review a district court's ruling on admissibility of evidence for an abuse of discretion.  United States v. Hazelett, 32 F.3d 1313, 1316 (8th Cir. 1994).

Under Rule 804(b)(3),[1] a statement is not excluded as hearsay if the declarant is unavailable as a witness and the statement was against the declarant's penal interest.  Before a statement is admitted pursuant to Rule 804(b)(3), a three-prong test must be satisfied:

> [I]t must be shown that (1) the declarant is unavailable as a witness, (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true, and (3) corroborating circumstances clearly

---

[1] Rule 804 states, in relevant part:

> (b) Hearsay exceptions.  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> . . . .
> (3) Statement against interest.  A statement which as at the time of it making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

indicate the trustworthiness of the statement.

Id. (quoting United States v. Riley, 657 F.2d 1377, 1383 (8th Cir. 1981)).

In Williamson v. United States, 114 S. Ct. 2431 (1994), the Supreme Court addressed the manner in which courts should resolve the against-penal-interest determination under Rule 804(b)(3). In Williamson, Harris was arrested when an officer discovered cocaine in the trunk of his rental car. Following his arrest, Harris gave a detailed account of his involvement in a cocaine operation and made statements implicating Williamson. The Court recognized that "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts." Id. at 2435. The Court remanded the case, holding that "[t]he district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else." Id.

As the Seventh Circuit noted, Williamson rests on the premise that "[p]ortions of inculpatory statements that pose no risk to the declarants are not particularly reliable; they are just garden variety hearsay." Carson v. Peters, 42 F.3d 384, 386 (7th Cir. 1994). Thus, courts "must separate the incriminating portions of statements from other portions" of the statements because "portions of a confession that do not inculpate the declarant are not reliable enough for prosecutors to use against anyone other than the declarant." Id.

In Hazelett, we applied the standards set forth in Williamson. In that case, King was arrested after a DEA agent discovered that she was carrying drugs. King agreed to cooperate with the authorities and implicated Hazelett in a subsequent statement. We

held that King's statements incriminating Hazelett were inadmissible under Rule 804(b)(3) inasmuch as "she had nothing to lose by confessing, and she certainly had nothing to lose by implicating another person, particularly someone more culpable."  Hazelett, 32 F.3d at 1318.

Williamson required the district court to examine each portion of Wheeler's statement to determine whether it tended to subject her to criminal liability.  We agree with the district court that Wheeler's statement that Mendoza had delivered the methamphetamine was not sufficiently against her penal interest to warrant admission under Rule 804(b)(3).  Wheeler agreed to cooperate with authorities after she was caught red-handed with $16,000 in drug money.  Initially, she denied that Mendoza was involved in the transaction and named someone else as her source.  It was only after the agents apprehended Mendoza near the drop site location and confronted her with this fact that she pointed the finger at Mendoza.  At that point, she had nothing to lose by implicating him.  Moreover, she may reasonably have believed that by implicating Mendoza she would curry favor with the authorities and lessen her own punishment.  See Hazelett, 32 F.3d at 1318.

The district court's order prohibiting the government from using Wheeler's statement to implicate Mendoza is affirmed.  The district court's order granting Wheeler's motion to suppress is reversed.  The cases are remanded for further proceedings consistent with this opinion.

BRIGHT, Circuit Judge, concurring in part and dissenting in part.

I concur in that portion of the majority opinion concluding that Wheeler's statements were inadmissible hearsay against Mendoza.  I dissent from that portion of the opinion concluding that Wheeler's statements were "voluntary" and thus admissible against her.

The question of voluntariness is a mixed question of law and fact. As the majority observes, a court should examine the circumstances surrounding the confession, including the conduct of law enforcement officials and the capacity of the suspect to resist pressure to confess. Slip op. at 5 (citing United States v. Johnson, 47 F.3d 272, 275 (8th Cir. 1995)). Although government agents may initiate conversations on cooperation without rendering a confession involuntary, custodial statements are presumed involuntary and the government must overcome the presumption by a preponderance of the evidence. Tippitt v. Lockhart, 859 F.2d 595, 597 (8th Cir. 1988), cert. denied, 490 U.S. 1100 (1989).

The majority does not seem to question the underlying crucial findings of the district court that Wheeler was in a custodial situation and that an officer visibly carrying a gun got in her car and told her that she would be arrested immediately if she did not cooperate. This statement was made before Wheeler talked. The basic question is whether these matters served to coerce Wheeler's statements here in question given to the officers. The district court answered the question in the affirmative. The district judge who heard the live witnesses stands in a superior position to this court in finding that the conversation and other circumstances continued their coercive effect to the time when Wheeler spoke out.

The facts support the trial court's findings of coerciveness. Those findings are not clearly erroneous and lead to the ultimate conclusion of involuntariness of the confession. Cf. United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995) (acknowledging that suspect's will may be overborne and capacity for self-determination critically impaired where confession extracted by threats, violence, or direct or implied promises, but finding no such extraction where officers simply promised suspect he would not go to jail that same night and would retain the use of his personal vehicle).

Accordingly, I dissent from that portion of the majority opinion which concludes Wheeler's statements were voluntary and admissible against her. I believe the district court's opinion should be affirmed in its entirety.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.