# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1082

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska |
| Kevin L. Pierce, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:   April 13, 1998

Filed:   August 11, 1998

_____

Before BOWMAN,[1] Chief Judge, and McMILLIAN and MURPHY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

The United States of America (the government) appeals from an order entered in the United States District Court for the District of Nebraska denying in part and granting in part a motion to suppress filed by Kevin L. Pierce (defendant). United States v. Johnson, No. 8:97CR91 (D. Neb. Dec. 23, 1997) (hereinafter "District Court

_____

[1]The Honorable Pasco M. Bowman succeeded the Honorable Richard S. Arnold as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998.

Order") (partially adopting the magistrate judge's report and recommendation, id., No. 8:97CR137 (Nov. 20, 1997) (hereinafter "Report and Recommendation")). For reversal, the government argues that the district court erred in holding that defendant's self-incriminating statements to an investigating police officer were made involuntarily because another officer had promised defendant leniency in exchange for cooperation. For the reasons stated below, we reverse that holding of the district court and remand the case for further proceedings consistent with this opinion.

## Jurisdiction

Jurisdiction in the district court was proper pursuant to 18 U.S.C. § 3231. The government timely invoked the jurisdiction of this court pursuant to 18 U.S.C. § 3731 (allowing the government to file an appeal within thirty days from a decision or order of the district court suppressing or excluding evidence in a criminal case).

## Background

Defendant and Phelan Johnson were charged in a single indictment dated August 19, 1997, on one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Following their indictment, defendant and Johnson each filed a motion to suppress.[2] They each moved to suppress physical evidence taken from the vehicle in which they had been traveling at the time of their arrest, and defendant additionally moved to suppress statements he made to a law enforcement officer following his arrest. The motions to suppress initially came before a magistrate judge. The magistrate judge held an evidentiary hearing on the motions. The following summary of the underlying facts is based upon the magistrate judge's findings of fact,

---

[2]The district court's disposition of Johnson's motion to suppress is not at issue in the present appeal.

Report and Recommendation at 2-10, and the exhibits introduced at the suppression hearing.

On August 8, 1997, at approximately 2:30 a.m., Nebraska State Patrol (NSP) Trooper Staskiewicz signaled to a van traveling on Interstate 80 near Omaha, Nebraska, to pull over. Trooper Staskiewicz did so after noticing that the van's bright lights were illuminated, observing it cross the white center line dividing the lanes of traffic, and clocking its speed at 56 miles per hour in a construction zone with a posted speed limit of 50 miles per hour. The van stopped on the right shoulder of the highway, and Trooper Staskiewicz stopped his patrol car behind it. Trooper Staskiewicz walked up to the driver's side of the van. The driver, Johnson, opened the window, and Staskiewicz smelled an odor of air freshener coming from inside. Trooper Staskiewicz obtained the vehicle registration and defendant's and Johnson's driver's license numbers. He radioed the numbers to NSP headquarters and received a "use caution" warning with respect to each individual, indicating possible arrests or convictions for assaulting a police officer or homicide. He was also informed that defendant had a prior drug trafficking conviction. Trooper Staskiewicz called for backup. While waiting for the backup car to arrive, Trooper Staskiewicz talked with each of Johnson and defendant separately about the origin, destination, and purpose of their trip. Defendant and Johnson gave conflicting statements about the purpose of their trip. After a backup officer arrived, Trooper Staskiewicz brought his drug dog, which had been in the back of his patrol car, over to the van. The dog responded positively for the presence of narcotics. Trooper Staskiewicz opened the door of the van and immediately smelled marijuana. Inside the van, he discovered a duffle bag filled with brick-shaped objects (which were later confirmed to be marijuana). Defendant and Johnson were immediately placed under arrest and handcuffed. The arrest took place at approximately 2:57 a.m.

Trooper Staskiewicz transported defendant to NSP headquarters while Johnson rode in the other officer's car. While en route in the patrol car, Trooper Staskiewicz

commented to defendant about the benefits of cooperating. Trooper Staskiewicz told defendant that he could "get off pretty easy" if he cooperated with the police and completed the marijuana delivery. Trooper Staskiewicz told defendant that the prospects for cooperating would be discussed at the NSP station and that he should not say anything until his rights were read to him at the station. Trooper Staskiewicz also said "[i]t's a proven fact that cooperation helps in the long run . . . especially if they go federal." The conversation between Trooper Staskiewicz and defendant was recorded by an audio/video camera mounted in the patrol car. (A copy of the audio/video taperecording was introduced into evidence at the suppression hearing as Government Exhibit 1.)

Once Trooper Staskiewicz and defendant arrived at the NSP station, defendant was left with another officer, Investigator Lutter, to be interviewed. Investigator Lutter testified that he was unaware of the prior conversation between Trooper Staskiewicz and defendant in the patrol car. Investigator Lutter read defendant his Miranda rights from a pre-printed "Advice of Rights" form. Investigator Lutter instructed defendant to answer "yes" or "no" each time he was read a right and asked if he understood it, and then to initial each right on the form if he understood it. Defendant verbally indicated that he understood each of his rights as read to him, and he wrote his initials, "K.P.," beside each right on the form. Defendant did not ask any questions about his rights, nor did he request an attorney. Investigator Lutter then read aloud to defendant the "waiver of rights" paragraph on the form, which states the following: "I have been advised of my rights and I understand them. I am willing to answer questions at this time without an attorney present. I have not received any threats or promises, and I will answer questions freely and voluntarily." Investigator Lutter asked defendant whether he understood that no promises were being made, nor was anything being offered, in exchange for his statement. Defendant indicated that he understood and signed his name directly below the waiver of rights paragraph. (A copy of the "Advice of Rights" form, bearing defendant's initials and signature, was introduced into evidence at the suppression hearing as Government Exhibit 2.)

-4-

Investigator Lutter then proceeded to question defendant. The interrogation lasted approximately half of an hour (from 4:26 a.m. to 4:55 a.m.). First, Investigator Lutter obtained biographical information from defendant. Then he asked defendant about the marijuana found in the van. Defendant admitted that he and Johnson were transporting the marijuana to Detroit, to a contact named Jim Bob for whom defendant had once previously made a delivery. According to defendant, he received $500 for the prior delivery, and this time he was to receive $2,000. Investigator Lutter suggested to defendant that he cooperate with law enforcement by attempting to complete the marijuana delivery. Defendant agreed. Afterward, defendant talked with Johnson and Johnson also agreed to cooperate in an attempted delivery.

Based upon these facts, the magistrate judge recommended that defendant's motion to suppress be denied. Report and Recommendation at 17-18. Defendant filed objections. Upon review, the district court agreed with the magistrate judge that the initial stop and search of the van were constitutionally permissible. However, the district court disagreed with the magistrate judge's conclusion that defendant's statements to Investigator Lutter were made voluntarily. The district court reasoned:

> [Trooper Staskiewicz's] statements were plainly inducements that rendered [defendant's] subsequent statements to Investigator Lutter involuntary. . . . The trooper implied much more by his use of the words "proven fact" than merely suggesting that matters would go more smoothly for [defendant] if he cooperated. The trooper planted in [defendant's] mind a scenario that controlled everything else [defendant] did and said during the remainder of his stay at NSP headquarters, including his statements to Investigator Lutter. In fact, that promise of leniency was so real to [defendant] that he was able to convince the reluctant Johnson to join in the plan to deliver the marijuana to their Detroit contact. Lutter's subsequent reading and initialing of a Miranda form could not eradicate the efficacy of the earlier promise made by the friendly, respectful trooper in the cruiser.

District Court Order at 5.[3]  The district court also reasoned "[t]o the extent that the trooper's statements promising leniency were 'unfulfillable,' they were false." Id. at 6 (citing, among other cases, United States v. Ruggles, 70 F.3d 262, 265 (2d Cir. 1995) (Ruggles) ("Material misrepresentations based on unfulfillable or other improper promises might perhaps overbear a defendant's will."), cert. denied, 516 U.S. 1182 (1996)).  Consequently, the district court suppressed defendant's statements to Investigator Lutter.  The government filed this timely interlocutory appeal pursuant to 18 U.S.C. § 3731.

## Discussion

The sole issue on appeal is whether the district court erred in granting defendant's motion to suppress his statements on the ground that they were made involuntarily. While we review the district court's finding of the underlying facts for clear error, we review *de novo* the district court's determination of whether defendant acted voluntarily in making the self-incriminating statements, which essentially amounted to a confession. United States v. Mendoza, 85 F.3d 1347, 1350 (8th Cir. 1996) (Mendoza); United States v. Johnson, 47 F.3d 272, 275 (8th Cir. 1995); cf. Ornelas v. United States, 517 U.S. 690, 695-700 (1996) (explaining why, in Fourth Amendment context, review of probable cause or reasonable suspicion determinations is independent of and without deference to district court's determinations while appellate review of findings of underlying historical facts is for clear error).[4]

---

[3]We note that the district court's language suggests that Investigator Lutter, not defendant, initialed the Advice of Rights form.  However, it is undisputed that defendant was the one who initialed the form.  See Government Exhibit 2.

[4]Defendant mistakenly assumes that, in order for us to reverse the district court's decision, we must hold that the court *clearly* erred in concluding, for example, that Trooper Staskiewicz's statements to defendant in the parol car "rendered [defendant's] subsequent statements to Investigator Lutter involuntary," and other similar conclusions

-6-

In considering whether a confession was voluntary, the determinative question is whether the confession was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired. Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (citing Culombe v. Connecticut, 367 U.S. 568, 602 (1961)). In making this determination, courts look at the totality of the circumstances, including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure. United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990), cert. denied, 502 U.S. 829 (1991).

Citing Tippitt v. Lockhart, 859 F.2d 595 (8th Cir. 1988), cert. denied, 490 U.S. 1100 (1989), among other cases, defendant asserts that the assessment of whether a confession was voluntary under the totality of the circumstances requires consideration of (1) the specific interrogation tactics used, (2) the details of the interrogation, and (3) the characteristics of the accused. With respect to the tactics used, defendant argues that Trooper Staskiewicz used misleading phrases such as "get off easy" and "proven fact." As to the details of the interrogation, defendant notes that little is known about the interrogation other than that it lasted approximately 30 minutes, it was conducted by someone other than the person who made the "promise," and it was not taperecorded. Regarding the characteristics of the accused, defendant notes, among other things, that he is African American, that he and Johnson had traveled a very long distance, and that he was under great stress in part because the time from the initial stop to the end of the interrogation lasted from approximately 2:30 a.m. to 5:00 a.m. Defendant also maintains that Trooper Staskiewicz made promises that were in fact false and unfulfillable and that Trooper Staskiewicz had neither the knowledge nor the authority to make those promises.

---

essentially indicating that defendant's will was overborne and his statements were not voluntary. Brief for Appellee at 5-6 (quoting the district court's order).

The present case is similar to <u>Mendoza</u>, in which the government appealed from an order of the district court suppressing a confession made by one of the defendants in the case (Wheeler). The facts in <u>Mendoza</u> included the following. Wheeler had been caught accepting payment for methamphetamine during an undercover operation. After Wheeler was read her <u>Miranda</u> rights, while en route to the police station, a police officer told Wheeler that she would be arrested immediately if she did not cooperate. Upon arriving at the station, a second officer, Agent Mizell, again advised her of her <u>Miranda</u> rights and told her that she was not under arrest and that she would not be charged at that point. Agent Mizell further stated that he could not offer her a deal in exchange for her cooperation but that he would inform the prosecutor if she were to cooperate. After that, Wheeler agreed to cooperate. 85 F.3d at 1348-49. In ruling that Wheeler's confession was involuntary, the district court reasoned "[w]ere it not for the fact that [the officer] told defendant Wheeler that she would be immediately arrested if she did not cooperate with the officers, I would probably conclude that all of her statements to the officers were voluntary. . . . That threat, which was made while defendant Wheeler was in a custodial situation, is a coercive facet in the totality of the circumstances." <u>Id.</u> at 1350 (quoting the district court's order). However, upon *de novo* review, this court reversed, holding that, based on the totality of the circumstances, "Wheeler's will was not overborne by the agents when she decided to cooperate." <u>Id.</u> at 1351. This court found especially persuasive "the fact that Wheeler did not make any incriminating statements or decide to cooperate until after Agent Mizell had given her <u>Miranda</u> warnings and had told her that she would not be arrested or charged that day." <u>Id.</u>

In the present case, as in <u>Mendoza</u>, defendant was advised of his <u>Miranda</u> rights before his self-incriminating statements were made; he was not subjected to any physical or emotional coercion; he was not subjected to a particularly lengthy interrogation; and neither trickery nor deceit was used to extract his statements. <u>See id.</u> at 1350. In addition, we note that defendant had prior dealings with the criminal justice system; he made no incriminating statements to Trooper Staskiewicz in the

-8-

patrol car; Investigator Lutter carefully reviewed with defendant his <u>Miranda</u> rights and defendant initialed each one on the rights form; and defendant signed his name below the waiver of rights paragraph. We consider especially compelling the facts that Investigator Lutter specifically asked defendant if he understood that no promises were being made nor was anything being offered in exchange for defendant's statement, and defendant signified his understanding both verbally and in writing. Therefore, we hold that defendant's will was not overborne when he confessed. Moreover, although we are of the opinion that Trooper Staskiewicz did not make any promises, much less promises that were false or unfulfillable,[5] we hold that Investigator Lutter's warnings and defendant's understanding of those warnings would have, in any event, undermined or negated any motivating effect Trooper Staskiewicz's comments could have had. Stated differently, even if Trooper Staskiewicz's statements in the patrol car could be construed as an inducement, the effect was attenuated and cured by subsequent events.

In sum, upon carefully reviewing the totality of the factual circumstances of this case, we hold that defendant's self-incriminating statements to Investigator Lutter were made knowingly and voluntarily. <u>Accord</u> <u>Ruggles</u>, 70 F.3d at 265 (a confession is not involuntary merely because suspect was promised leniency if he cooperated with law enforcement and statements to the effect that it would be to suspect's benefit to cooperate are not improperly coercive); <u>United States v. Wrice</u>, 954 F.2d 406, 411 (6th Cir.) (conceding for sake of argument that a promise of lenient treatment may be so attractive as to make a confession involuntary, but suggesting that it must rise to the level of an irresistible inducement), <u>cert. denied</u>, 504 U.S. 945 (1992).

---

[5]Indeed, we note that a successful controlled delivery of the marijuana may well have proven beneficial to defendant by warranting a sentence reduction for substantial assistance or acceptance of responsibility under the guidelines.

## Conclusion

For the reasons stated, the decision of the district court to suppress statements made by defendant is reversed, and the case is remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.