# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3724

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri |
| Emelio Marrero, also known as | * | |
| Guillermo Dusal, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:     February 10, 1998

Filed:     August 26, 1998

_____

Before McMILLIAN, WOLLMAN and LOKEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Emilio Marrero (defendant) appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri, upon a jury verdict finding him guilty on one count of being a felon in possession of a firearm, in violation of 18

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

U.S.C. § 922(g)(1).  <u>United States v. Marrero</u>, No. 4:97CR00004-001 (W.D. Mo. Sept. 11, 1997) (judgment).  For reversal, defendant argues that the district court erred in denying his motion to suppress physical evidence and statements.  <u>Id.</u> (June 4, 1997) (hereinafter "District Court Order") (adopting the report and recommendation of the magistrate judge,[2] <u>id.</u> (May 15, 1997) (hereinafter "Report & Recommendation")).   For the reasons stated below, we affirm.

## Jurisdiction

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291.  The notice of appeal was timely filed pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.

## Background

Defendant was indicted on January 13, 1997, on one count of being a felon in possession of a firearm.  Defendant moved to suppress the gun which had been seized from his person at the time of his arrest and statements he had made to the police following his arrest.  An evidentiary hearing on his suppression motion was held before a magistrate judge.  The following is a brief summary of the facts as found by the magistrate judge.  Report & Recommendation at 2-4.

On January 3, 1996, Kansas City Police Officers Crader and Meyer were dispatched to a residence at 6649 Flora, in Kansas City.  The dispatcher advised the officers that the caller had reported a disturbance between a man and a woman and that the man was usually armed.  When the officers arrived at the residence, they observed a man and a woman arguing in the driveway.  The man, defendant, was seated in a car.

[2]The Honorable Sara W. Hays, United States Magistrate Judge for the Western District of Missouri.

Officer Crader began walking toward defendant while Officer Meyer walked toward the woman. As Officer Crader approached defendant, defendant hurried toward the front door of the residence and began pounding on the door with his left hand, shouting "let me in" and "open the door." Meanwhile, defendant was also "fishing around" in his waistband with his right hand. Believing that defendant was reaching for a weapon, Officer Crader ordered defendant to display his hands, but defendant did not comply. Officer Crader then grabbed defendant's left arm and pulled defendant around. Officer Crader observed that defendant did have a gun. A struggle ensued. By this time, Officer Meyer had come to assist Officer Crader. Officer Meyer tackled defendant from behind. During the struggle, defendant dropped the gun and also threw down a rock-like substance which field-tested positively as cocaine. Defendant ordered the woman to grab the gun. Before she could do so, Officer Crader drew his gun and ordered her to back away, which she did. One of the officers subdued defendant by using pepper mace. The officers recovered the gun, a semiautomatic weapon containing six rounds of ammunition. Defendant was placed under arrest and taken to the police headquarters.

At the police headquarters, Kansas City Police Detective Knapp read defendant his Miranda rights. Detective Knapp showed defendant a Miranda waiver form, which was written in English. Defendant was asked to read the waiver form aloud, which he did. Detective Knapp asked defendant if he was willing to talk, and defendant said he was. Defendant signed the waiver form and then answered Detective Knapp's questions. Defendant told Detective Knapp that the gun was his, that he had had it for two weeks, and that he carried it for personal protection. The entire conversation occurred in English. Defendant did not request an interpreter or indicate any difficulty understanding the English language.

Based upon these findings of fact, the magistrate judge rejected defendant's arguments that the officers lacked reasonable suspicion to conduct an investigatory stop, that the stop was carried out in an excessively forceful and unlawful manner, and

that his waiver of <u>Miranda</u> rights was not knowing and voluntary because he does not adequately understand the English language. Accordingly, the magistrate judge recommended that defendant's motion to suppress be denied. <u>Id.</u> at 10. Defendant timely objected.

Upon considering the objections and the government's response, the district court adopted the Report & Recommendation and denied defendant's motion to suppress. District Court Order at 2. In reference to defendant's claim that he had been stopped and the gun seized in violation of his Fourth Amendment rights, the district court explained:

> The record . . . indicates that the officers had reasonable suspicion to make the investigatory stop. The officers were summoned by a 911 disturbance call and were told that Defendant was usually armed. When one officer approached Defendant, he headed toward the door of a house, yelling at a person inside to let him in. Defendant then proceeded to put his hand in his waistband and appeared to be searching for a weapon. A struggle with one officer ensued and Defendant's gun landed in the yard. Defendant told his girlfriend to get the gun.

<u>Id.</u> at 1-2. In reference to defendant's argument that he did not knowingly and voluntarily waive his <u>Miranda</u> rights, the district court explained:

> The record . . . indicates that Defendant spoke English at the scene of the arrest on January 3, 1996, read his <u>Miranda</u> rights back to the detective and made a statement that the gun belonged to him. Several witnesses, including a detective, a deportation officer with INS and a parole officer, testified that Defendant spoke good English and never needed an interpreter.

<u>Id.</u> at 2.

The case proceeded to trial. The jury found defendant guilty on the one felon-in-possession count charged in the indictment. Defendant was sentenced to 192 months imprisonment, four years supervised release, and a special assessment of $50.00. This appeal followed.

**Discussion**

*Suppression of physical evidence*

We review *de novo* the legal questions of whether there was reasonable suspicion to stop or probable cause to arrest a suspect, and we review underlying factual findings for clear error. Ornelas v. United States, 517 U.S. 690 (1996). Defendant first argues that the district court erred in holding that the investigatory stop that led to the discovery of the gun was justified by reasonable suspicion. Defendant contends that the officers were not aware of particularized objective facts which, together with all reasonable inferences drawn therefrom, warranted a reasonable suspicion that a crime was being committed. Defendant suggests that, upon responding to the disturbance call which mentioned a man with a gun, the officers merely observed defendant and his girlfriend in the front yard; there were no signs of a disturbance, a weapon, or the commission of a crime; and, upon seeing the officers approaching, all he did was to walk to the front door of the residence. At that point, he maintains, the officers stopped him, demanded that he show his hands, grabbed him, and sprayed mace in his face after the gun had fallen to the ground. Based upon *this* description of the facts, defendant argues that the stop was unjustified at its inception and exceeded the scope of a reasonable and lawful investigatory stop. See Terry v. Ohio, 392 U.S. 1, 19-20 (1968) (Terry) ("[I]n determining whether the seizure and search were 'unreasonable' our inquiry is a dual one – whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.").

Although defendant has failed to articulate the argument, it appears that he is urging this court to reject as clearly erroneous much of the district court's factual findings (as set forth in the magistrate judge's Report and Recommendation and summarized and adopted in the District Court Order ). For example, defendant fails to mention the facts that, when the officers approached defendant and his girlfriend, the two were arguing, that defendant rushed to the front door of the house and began pounding on the door while shouting (in English) for somebody to let him it, that he was meanwhile reaching into his waistband as if to be reaching for a gun, and that he failed to comply when ordered by Officer Crader to display his hands.

The evidence presented at the suppression hearing supports the district court's factual findings, and we therefore hold that they are not clearly erroneous. Based upon these facts, along with the reasonable inferences to be drawn therefrom, we further hold, upon *de novo* review, that the officers had reasonable suspicion of criminal activity. See, e.g., United States v. Hoosman, 62 F.3d 1080, 1083 (8th Cir. 1995) (reasonable suspicion of criminal activity was justified where officer knew the defendant had a history of drug trafficking, the defendant was observed moving from side to side and leaning forward inside the car after he spotted the approaching patrol car, and the defendant then immediately left the car in freezing cold weather and began walking away from the car and his companions).

We also reject defendant's argument that the stop was carried out in an excessively forceful and unlawful manner. See Terry, 392 U.S. at 18 ("[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope."). Under the circumstances of this case, the officers had "a narrowly drawn authority to permit a reasonable search for weapons for [their] protection" because the officers had "reason to believe that [they were] dealing with an armed and dangerous individual, regardless of whether [they] ha[d] probable cause to arrest [defendant] for a crime." Id. at 27. Moreover, in the present case, defendant refused to give the officers an opportunity to conduct such a protective patdown search

and, in fact, acted as though he were reaching for a concealed weapon while trying to enter the house. The officers then acted reasonably and appropriately in response to defendant's own threatening and evasive actions. See, e.g., United States v. Hensley, 469 U.S. 221, 235 (1985) (officers "were authorized to take such steps as were reasonably necessary to protect their personal safety and maintain the status quo during the course of the stop"), quoted in United States v. Jones, 759 F.2d 633, 636-37 (8th Cir.), cert. denied, 474 U.S. 837 (1985). Finally, by the time the officers placed defendant under arrest, they had probable cause to arrest him. For example, once Officer Crader observed the weapon that had been concealed on defendant's person, he had probable cause to arrest defendant for possession of a concealed weapon; once defendant began struggling with Officer Crader, probable cause existed to arrest defendant for assaulting a police officer. In sum, we hold that defendant's Fourth Amendment rights were not violated prior to or at the time of his arrest. The district court did not err in denying defendant's motion to suppress the gun.

*Suppression of post-arrest statements*

We review *de novo* the district court's determination of whether defendant acted voluntarily in making the self-incriminating statements, and review for clear error the underlying findings of fact. United States v. Pierce, No. 98-1082, slip op. at 6, 1998 WL 462310, at *3 (8th Cir. Aug. 11, 1998). In support of his motion to suppress his statements to Detective Knapp, defendant relies on the arguments addressed above as well as the contention that he did not knowingly and voluntarily waive his Miranda rights because he could not adequately understand the English language. Defendant apparently does not dispute the facts that he was shown the written Miranda waiver form and that he read the waiver form aloud before signing it. He points out, however, that "[a]n instructor [who] teaches English as a second language testified during the trial that [defendant] may not have understood the warnings and that his understanding of the written word is very limited." Brief for Appellant at 7. Defendant thus concludes that the statements he made to Detective Knapp should be suppressed, if not

as fruit of the poisonous tree, then because his "inability to read and write English must be taken into account when determining whether any waiver of counsel was voluntary." Id. at 10.

Although the arguments are not well-articulated, we will assume that defendant is challenging the district court's findings that defendant could read, speak, and understand English and that defendant sufficiently comprehended written and spoken English to effect a knowing and voluntary waiver of rights. The evidence presented at the suppression hearing showed that, at all relevant times, defendant spoke in English (including when he was banging on the door yelling "let me in" and "open the door") and that he never asked for an interpreter or indicated difficulty with the English language. Moreover, several law enforcement officers, including Officers Crader and Meyer, Detective Knapp, an immigration officer, and a probation officer, testified about defendant's proficiency in English based upon their observations and conversations with him. Accordingly, we hold that the district court did not clearly err in finding that defendant could understand English and that he effectively waived his Miranda rights, and we further hold, upon *de novo* review, that the totality of the circumstances supports the conclusion that defendant's statements were voluntary. In sum, we hold that the district court did not err in denying defendant's motion to suppress the statements he made to Detective Knapp.

**Conclusion**

For the reasons stated, the judgment of the district court is affirmed.

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-