**UNITED STATES of America, Plaintiff,**

v.

**Jose Luis Mendoza GARCIA, Defendant.**

**No. 3:14-cr-00025-2-JEG**

United States District Court, S.D. Iowa, Eastern Division.

Signed May 25, 2016

Clifford R. Cronk, III, United States Attorney's Office, Davenport, IA, for Plaintiff.

## ORDER

JAMES E. GRITZNER, Senior Judge United States District Court

This matter now comes before the Court on a Motion to Suppress filed by Defendant Jose Luis Mendoza Garcia (Defendant), which the Government resists. A hearing on the Motion was held in Davenport, Iowa, on May 19, 2016.[1] Defendant

---

1. The initial pleading on the Motion to Suppress included a reference to a <u>Franks</u> hearing. However, counsel for Defendant later advised the Court that the reference was in error and no <u>Franks</u> hearing was sought.

was represented by Jack Dusthimer, and the Government was represented by Assistant United States Attorney Clifford R. Cronk III. The motion is fully submitted and ready for ruling.

## I. BACKGROUND

In the summer of 2013, a group of law enforcement agents monitored a business called the San Jose Landscaping Company (the Company). The Company was allegedly used by a man named Jose Lopez-Raya (Lopez-Raya) as a front for the sale of illicit drugs including marijuana, methamphetamine, and cocaine. Law enforcement sought to identify Lopez-Raya's drug suppliers. On July 22, 2014, while law enforcement agents were conducting surveillance of the Company, a minivan with Illinois license plates arrived and remained at the Company for a short time. Defendant and a man named Albino Gomez (Gomez) were in the van. A man placed a cooler in the back of the van and the van departed the Company. Law enforcement agents followed the van eastbound on Interstate 80. Near LaSalle-Peru, Illinois, Illinois State Police troopers pulled over the van and found Defendant and Gomez inside. Upon a search of the vehicle, the troopers found marijuana residue inside the cooler that had been placed in the van and found a nine millimeter pistol with an obliterated serial number inside a bag or backpack. During the stop, Defendant was questioned in English and answered in English. Defendant's native language is Spanish.

On April 23, 2014, Defendant and Gomez were indicted for conspiracy to manufacture, distribute, and possess with intent to distribute methamphetamine and marijuana. A warrant was issued for their arrest on that day. On August 26, 2015, after Defendant's arrest, two agents of the Federal Bureau of Investigation (FBI) transported Defendant from his place of detention in Aurora, Illinois, to meet with FBI special agents Jeff Huber (SA Huber) and Jim McMillan (SA McMillan). Speaking English, Defendant told the transporting agents that they had the wrong person in custody and that there had been a mistake. Upon arrival, the agents relayed Defendant's message to SA McMillan. SA McMillan told Defendant in English that the FBI agents wanted to speak with him but needed to transport him to the federal courthouse in Davenport, Iowa. Defendant assented in English to speak with the agents on the way.

En route, SA McMillan gave Defendant a <u>Miranda</u> warning and asked Defendant whether he understood his rights. Speaking English, Defendant confirmed that he did. Defendant spoke freely with the agents for the next several minutes, and made incriminating statements that implicated him in the charged conspiracy with Lopez-Raya and Gomez. At the hearing on this Motion held on May 19, 2016, SA McMillan and SA Huber each testified that Defendant appeared to understand English during their conversations, that he responded in conversational English to their questions, and that his answers followed logically from their questions. There is no record evidence to the contrary.

On March 7, 2016, Defendant filed the current motion to suppress evidence procured from his post-<u>Miranda</u> questioning. Defendant argues that he did not speak and understand English sufficiently well to voluntarily, knowingly, and intelligently waive his <u>Miranda</u> rights, and that his incriminating statements are therefore unconstitutionally procured and inadmissible.

## II. DISCUSSION

■■■ "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against

self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." Id. For a waiver of these rights to be effective, the Miranda warnings "must be accompanied by the explanation that anything said can and will be used against the individual in court," which is needed to demonstrate "real understanding and intelligent exercise of the privilege." Id. at 469, 86 S.Ct. 1602.

"The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." Colorado v. Spring, 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). Rather, the Miranda warning serves to advise a defendant of his privilege not to be a witness against himself. Id. "The Miranda warnings protect this privilege by ensuring that a suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." Id. Likewise, a person who has been advised of his Miranda rights has been sufficiently apprised of his Sixth Amendment right to counsel. United States v. Garlewicz, 493 F.3d 933, 936 (8th Cir.2007).

On a challenge to the validity of a defendant's waiver of his Miranda rights, we "must evaluate all of the attendant circumstances in determining whether a waiver was voluntarily made." United States v. Marquez, 605 F.3d 604, 609 (8th Cir.2010) (quoting United States v. Henderson, 553 F.3d 1163, 1165 (8th Cir.

2009)). The government "need prove waiver only by a preponderance of the evidence." Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

In examining the totality of the evidence in the record, the Court finds that the only evidence in the record supports SA Huber's and SA McMillan's determinations that Defendant could communicate effectively in English when he chose to do so. Defendant communicated easily with the agents in English, did not express any lack of understanding, and did not ask the agents to stop the interview. Both SA Huber and SA McMillan are experienced law enforcement officers and each testified that Defendant answered questions appropriately and in context. Defendant has presented no evidence to support the conclusion that he could not understand English well enough to make a knowing and intelligent waiver of his Miranda rights. See Marquez, 605 F.3d at 609 (finding "no reason to conclude that [the defendant] lacked the capacity to waive his Miranda rights" where the defendant orally consented to an interview, had no difficulty communicating in English, responded to questions in English, and spoke conversational English); United States v. Marrero, 152 F.3d 1030, 1034 (8th Cir.1998) (holding that the trial court did not clearly err finding a knowing and voluntary waiver where the defendant spoke in English at all relevant times, never asked for an interpreter, or indicated difficulty with the English language, and where several law enforcement officers testified to the defendant's proficiency in English). Therefore, the Court finds that Defendant's waiver of his Miranda rights was voluntary, knowing and intelligent. The Court finds no other defects that would warrant suppression of Defendant's August 26, 2015 statements.

## III. CONCLUSION

The Court concludes that Defendant validly waived his Miranda rights prior to his

statements to law enforcement on August 26, 2015. Accordingly, Defendant's Motion to Suppress, ECF No. 41, must be **denied**.

**IT IS SO ORDERED.**